# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| AVERA MCKENNAN, <br><br> Plaintiff, <br> vs. <br><br> MEADOWVALE DAIRY EMPLOYEE BENEFIT PLAN and MEADOWVALE DAIRY, LLC., <br><br> Defendants. | No. C18-4010-LTS <br><br> **MEMORANDUM OPINION AND ORDER ON MOTION TO DISMISS** |

_____

## I.    INTRODUCTION

This matter is before me on defendants' motion (Doc. No. 13) to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted.  Plaintiff Avera McKennan (Avera) filed a resistance (Doc. No. 16) addressing the subject matter jurisdiction issue and simultaneously filed an amended complaint (Doc. No. 17) in response to the motion to dismiss for failure to state a claim. Defendants have replied and motioned to dismiss the amended complaint for lack of subject matter jurisdiction.  Doc. No. 18.  I find that oral argument is not necessary. *See* N.D. Iowa L.R. 7(c).

## II.    BACKGROUND

On February 12, 2018, Avera, a South Dakota nonprofit corporation that operates a hospital in Sioux Falls, South Dakota, filed a complaint (Doc. No. 1) against

Meadowvale Dairy Employee Benefit Plan (the Plan) and Meadowvale Dairy, LLC,[1] in its capacity as Plan Administrator (Meadowvale/the Administrator) for the wrongful denial of plan benefits on behalf of Juan Pablo Garcia Marquez, A.K.A. Gilberto Fuentes (Marquez). Defendants responded by filing a pre-answer motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Avera responded on April 19, 2018, by resisting dismissal and by filing an amended complaint.

The amended complaint and attached exhibits state the following allegations:

The Plan is a self-insured employee benefits plan. Doc. No. 17 at ¶ 3. Meadowvale, an Iowa corporation with its principal place of business in Rock Valley, Iowa, sponsored the Plan on December 1, 2014. *Id*. at ¶ 6; Doc. No. 17-3. The Plan was subsequently amended and restated on February 10, 2016, with an effective date of December 1, 2015. Doc. Nos. 17 at ¶ 6; 17-1; 17-2. The Plan is intended to qualify as a welfare benefit plan under ERISA. Doc. No 17-3 at 2. Under the terms of the Plan, a "Full-Time Employee of [Meadowvale] who regularly works 30 or more Hours . . . per week will be eligible to enroll for coverage" after a 60 day waiting period and at least one hour of service. Doc. No. 17 at ¶ 7. Coverage begins "as of the first day of the month following completion of the waiting period provided all required election and enrollment forms are properly submitted to the Plan administrator." *Id*. at ¶ 8.

Marquez was employed by Meadowvale from September 30, 2015, until January 2016, when he began receiving treatment for Guillain-Barre Syndrome, a rapid-onset muscle weakness disease that ultimately left Marquez paralyzed. *Id*. at ¶¶ 9-11. Marquez was treated at Avera and incurred medical expenses at Avera in the amount of $760,713.45, excluding interest, prior to his death. *Id*. at ¶ 12. As a full-time employee of Meadowvale, Marquez was eligible for participation in the Plan and complied with the requisite steps to enroll in the plan. *Id.* at ¶ 10. As a result, Marquez was enrolled in

---

[1] I will refer to Meadowvale Dairy, LLC, as Meadowvale when discussing its actions as an employer and the Administrator when discussing its actions as a provider of an ERISA health insurance plan.

the Plan when he began receiving treatment, and the Plan submitted payment for some of the medical expenses incurred. *Id.* at 14.

While Marquez was being treated, it was discovered that he was an undocumented immigrant and that he had enrolled in the Plan using a false name and social security number. On April 12, 2016, the Administrator sent Marquez a letter stating "effective May 13 your coverage under the Plan will be rescinded retroactive to 9/30/15." *Id.* at ¶ 15. The proffered reason for rescinding coverage was that Marquez had falsely misrepresented his identity to Meadowvale. Doc. No. 13-1 at 12.

Avera alleges that it is the assignee of Marquez's rights under the Plan. Doc. No. 17 at ¶ 1. On May 10, 2016, Marquez purported to assign "all of [his] rights, remedies, benefits . . . as well as any and all causes of action that [he] might have now or in the future against any Payer to the extent of [his] medical charges, the right to prosecute such cause of action either in [his] name or in the name of Avera" by signing a document entitled "Partial Assignment of Cause of Action, Assignment of Proceeds, Contractual Lien and Treatment Agreement" (the Assignment). *Id.* at ¶ 15; *see also* Doc. No. 17-4. The assignment is signed "Juan Pablo x GM." The parties have suggested that the document was actually signed by Marquez's mother, Graciela Marquez, either pursuant to a medical power of attorney or at Marquez's direction. Marquez additionally signed a Durable Power of Attorney for Health Care Decisions granting Graciela Marquez the ability to make health care decisions (Doc. No. 17-4 at 5); an Authorization for Release of Protected Health Information to Nominated Health Care Attorney-In-Fact (*Id.* at 6); and a form granting Marquez's "agent," among other powers, "the power and authority to serve as my personal representative for all purposes of the Health Insurance Portability and Accountability Act of 1996."[2] *Id.* at 7.

---

[2] Page 7 of Doc. No. 17-4 begins mid-sentence, and the sentence does not appear to link to any of the other pages provided by any of the parties to this case. Therefore, it is difficult to determine the identity of the "agent" referenced on this page or the full scope of the authorization on this page.

Following assignment, Avera attempted to comply with the internal appeals process. Doc. No. 17 at ¶¶ 16-24; *see also* Doc. Nos. 13-1, 13-2, 13-3, 13-4 and 13-5. Avera first contacted the Administrator on July 21, 2016, to request, in accordance with 29 U.S.C. § 1024(b), the documents that it would need to appeal the adverse benefit determination. Doc. No. 13-1 at 16-18. It appears that Avera's representative did not identify to Meadowvale that he was acting on behalf of Avera at that time. *Id.* at 16 ("Our firm has been retained by [Marquez] . . ."). The Administrator denied the request for documentation, citing a lack of proper written authorization by the beneficiary. *Id.* at 21. Avera responded on September 12, 2016, with a copy of the Assignment as well as all other documents referenced above, arguing that it did in fact have authorization to request the documentation on behalf of Marquez. *Id.* at 23. Although the Administrator denied that the Assignment was valid or enforceable, it produced the documents on September 30, 2016. *Id.* at 44-45. There is a dispute as to whether the production of documents was timely, nevertheless, Avera submitted an appeal to the Administrator within the Plan's 180-day deadline on October 6, 2016. *Id.* at 2-9. Meadowvale denied the appeal on October 31, 2016, and denied a secondary appeal on December 16, 2017.

According to the denial of benefits appeal decision, Avera's appeal was denied for three reasons:

> First, Avera has no right to pursue this appeal because it is not an authorized representative of Mr. Marquez/Fuentes. An authorized representative is one who "has been authorized to act **on behalf of a claimant** . . ." 29 C.F.R. § 2560.503-1(b)(4) (emphasis added). The Plan states that assignment of benefits to a medical provider does not constitute appointment of that provider as an authorized representative. *See* Meadowvale Dairy Employee Benefit Plan, Plan Document and Summary Plan Description p. 57. Instead, the Covered Person must complete a form to designate an authorized representative. *Id.* Since no form was completed, Avera is not authorized to act on behalf of Mr. Marquez/Fuentes or his estate.

> Second, the assignment that Avera has submitted as part of this appeal is not valid. It was not signed by Mr. Marquez/Fuentes, and the person who allegedly signed it on his behalf did not have the power to do
4

so. The power of attorney submitted by Avera in support of this assignment was limited to health care decisions only, and was only effective if Mr. Marquez/Fuentes was "unable, in the judgment of [his] attending physician, to make . . . health care decisions." Further, Meadowvale believes this power of attorney is invalid under Iowa law because it was witnessed by an Avera employee. *See* Iowa Code. Ann. § 144B.3.

Finally, the appeal is denied because Mr. Marquez/Fuentes submitted a false name and social security number to Meadowvale. The Plan specifically states that coverage will be terminated on the date that an employee "performs an act, practice, or omission that constitutes fraud" or "makes an intentional misrepresentation of a material fact. *See* Meadowvale Dairy Employee Benefit Plan, Plan Document and Summary plan Description p. 21. Retroactive rescission under these circumstances is permitted under federal law. 45 C.F.R. 147.128(a)(1).

Doc. No. 13-3 at 1. The resolution of the second appeal was substantially identical. Avera now argues that it was never provided the form referenced in paragraph one of the adverse determination and that the failure to provide the form was a breach of the Plan.

### III. RULE 12(b)(1) STANDARDS

The rules of procedure permit a pre-answer motion to dismiss "for lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "The existence of subject-matter jurisdiction is a question of law that this court reviews de novo. The party seeking to invoke federal jurisdiction . . . carries the burden, which may not be shifted to another party." *Jones v. United States*, 727 F.3d 844, 846 (8th Cir. 2013) (internal citations omitted). Dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) is permissible on the basis of a defense or exception to jurisdiction, such as a lack of Article III standing or a failure to exhaust administrative remedies.

Where, as here,[3] a party makes a factual challenge to the court's jurisdiction, "no presumptive truthfulness attaches to the [complainant's] allegations, and the existence of

---

[3] Defendants' argument that the claims must be dismissed for lack of subject matter jurisdiction due to a lack of standing and failure to exhaust necessarily embraces outside evidence, such as

5

disputed material facts will not preclude [the court] from evaluating . . . the merits of the jurisdictional claims." *Iowa League of Cities v. EPA*, 711 F.3d 844, 861 (8th Cir. 2013) (citation omitted, alterations supplied). Where the challenge is factual, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). "[T]he court may look beyond the pleadings and the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) (citation omitted). The court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004).

## IV. DISCUSSION

In arguing that subject matter jurisdiction is lacking, defendants assert that Avera does not have standing to bring this action because (1) the Plan prohibits assignment of benefits and (2) the Assignment was ineffective under South Dakota law. Defendants further argue that Avera has failed to exhaust its administrative remedies. Defendants' final argument, that Avera has misstated its cause of action and thus failed to state a claim, has been cured by Avera's amended complaint.

### A. *Standing*

Defendants contend that Avera does not have standing because the Plan prohibits assigning an employee's benefits under the plan to a third party. Defendants argue that the Assignment transferred only Marquez's cause of action, an interpretation defendants

---

the contracts between the parties and the defendants' internal records demonstrating the administrative denial of benefits.

6

insist invalidates the Assignment under South Dakota law. Avera responds that the Assignment is valid and enforceable and gives it a right to act on Marquez's behalf in pursuing benefits under the Plan.

The doctrine of standing ensures that courts hear only "those disputes which are appropriately resolved through the judicial process." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted). As the Supreme Court explained:

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent….' Second, there must be a causal connection between the injury and the conduct complained of. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.
>
> The party invoking federal jurisdiction bears the burden of establishing these elements. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.

*Id.* at 560-61 (cleaned up);[4] *see also City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007).

Defendant's first argument is contrary to settled Eighth Circuit law. The Plan states that "[n]o Participant or Beneficiary shall have the right to alienate, anticipate, commute, pledge, encumber or assign any of the benefits or payments which he may expect to receive, contingently or otherwise, under the Plan." Doc. No. 1-3 at 13. The

---

[4] The parenthetical "(cleaned up)" may be used "when extraneous, residual, non-substantive information has been removed" from a citation—in this case, bracketed modifications, internal quotation marks and duplicative parentheticals. *United States v. Steward*, 880 F.3d 983, 986 & n.2 (8th Cir. 2018).

Eighth Circuit has held that identical language does not prohibit the assignment of a cause of action. *Lutheran Med. Ctr. of Omaha v. Contractors, Laborers, Teamsters and Engineers Health and Welfare Plan*, 25 F.3d 616, 619 (8th Cir. 1994), *abrogated on other grounds in Martin v. Ark. Blue Cross and Blue Shield*, 299 F.3d 966 at 979-71 (8th Cir. 2002) ("This anti-assignment clause does not prevent [assignees] from suing the Plan. Section 22 clearly prohibits assignment of "rights or benefits" under the Plan, but does not prohibit assignment of causes of action arising after the denial of benefits."). *Lutheran* recognized that "nothing in ERISA prohibits a plan participant from assigning a cause of action to a health care provider after the services have been rendered and the loss incurred" and that "[d]enying standing to health care providers as assignees of beneficiaries may undermine the goal of ERISA." *Id.* Defendants recognize this distinction. *See* Doc. No. 13-6 at 3 ("the Assignment is effective, if at all, as an assignment of Marquez's 'causes of action.'").[5]

Defendants' second argument, that the assignment is ineffective as a matter of South Dakota law, is also without merit. Defendants argue that South Dakota law prohibits the assignment of causes of action, instead treating such assignments as an

---

[5] I note that while the Plan purports to prohibit the assignment of benefits or payments under the Plan, South Dakota law expressly authorizes the assignment of health insurance benefits to a hospital:

> Any person insured by a health insurance company . . . may assign in writing benefits from such policy, contract or certificate to a hospital licensed pursuant to chapter 34-12. If such assignment is executed and written notice thereof is given, the insurance company . . . shall pay the benefits directly to the hospital.

S.D. Cod. Laws § 58-17-61. Avera relies on this provision as further authority for its right to bring a cause of action as the assignee of Marquez's rights and benefits. Of course, this provision is almost-certainly pre-empted. *See Ark. Blue Cross and Blue Shield v. St. Mary's Hosp., Inc.*, 947 F.2d 1341 (8th Cir. 1991) (Arkansas assignment statute of general application was preempted by ERISA to the extent it contradicted plan provisions). However, as discussed below, Avera has standing regardless of the Plan's restriction on assignment of benefits because the Plan does not prohibit assigning causes of action.

equitable lien in the proceeds of the cause of action that does not give the assignee a right to sue on behalf of the assignor. In support of this argument, defendants reference a common-law prohibition against assigning *personal injury* claims. *See* Doc. No. 13-6 at 7 (citing *A. Unruh Chiro. Clinic v. De Smet Ins. Co.*, 782 N.W.2d 367, 372 (S.D. 2010)). This case is not applicable to the present cause of action, and this argument fails.

While several jurisdictions refuse to allow personal injury plaintiffs to assign their causes of action to third parties, *see A. Unruh*, 782 N.W.2d at 370-71 (collecting cases), Marquez did not assign a personal injury claim. Instead, Marquez was the beneficiary under a health insurance plan who, according to the Assignment, purported to assign "all of [his] rights, remedies, benefits . . . as well as any and all causes of action that [he] might have now or in the future against any Payer to the extent of [his] medical charges, the right to prosecute such cause of action either in [his] name or in the name of Avera." Doc. No. 17 at ¶15. Thus, the Assignment covers not only Marquez's rights under the Plan, but also any causes of action and the right to prosecute such causes of action.

Under South Dakota law, one who receives such an assignment has "the right to sue for breach of contract in [its] own name." *Grady v. Commers Interiors, Inc.*, 268 N.W.2d 823, 825 (S.D. 1978). There is simply no authority for the argument that the Assignment, if otherwise valid, does not grant Avera standing to prosecute any cause of action that Marquez may have against the Plan.

B.   *Exhaustion*

Defendants also argue that Avera obtained no rights through the Assignment due to a failure to exhaust administrative remedies. The Administrator's argument on this issue is a bit convoluted. It argues that Marquez did not exhaust his administrative remedies within the time limits required by the Plan. It further argues that Avera's later attempt to appeal the denial of benefits was improper due to Marquez's failure to use the correct form to notify defendants that he had appointed Avera as his representative to pursue his claim. Avera responds that it did exhaust its administrative remedies (either

because its claim was deemed exhausted or because it substantially complied with the plan's requirements) and, in any event, that exhaustion is not a bar to subject matter jurisdiction.

In fact, failure to exhaust *is* a bar to jurisdiction in the Eighth Circuit. *See Chorosevic v. MetLife Choices*, 600 F.3d 934, 941 (8th Cir. 2010) ("Where a claimant fails to pursue and exhaust administrative remedies that are clearly required under a particular ERISA plan, his claim for relief is barred."); *Angevine v. Anheuser-Busch Cos. Pension Plan*, 646 F.3d 1034, 1037 (8th Cir. 2011) (same). The purpose of the exhaustion requirement is to "giv[e] claims administrators an opportunity to correct errors, promot[e] consistent treatment of claims, provid[e] a non-adversarial dispute resolution process, decreas[e] the cost and time of claims resolution, assembl[e] a fact record that will assist the court if judicial review is necessary, and miminiz[e] the likelihood of frivolous lawsuits." *Id.* (quoting *Galman v. Prudential Ins. Co.*, 254 F.3d 768, 770 (8th Cir. 2001).[6] Exhaustion is excused only when pursuing an administrative remedy would be futile or there is no administrative remedy to pursue. *Brown v. J.B. Hunt Transp. Serv., Inc.*, 586 F.3d 1079, 1085 (8th Cir. 2009)).

---

[6] Some circuits disagree. *See, e.g., Edwards v. Briggs & Stratton Retirement Plan*, 639 F.3d 355, 365 n.5 (7th Cir. 2011) ("We have never treated the requirement of exhaustion of administrative remedies in ERISA cases as being jurisdictional and instead . . . we consistently have held that the decision to require exhaustion in a given case is committed to a district court's discretion."); *Mack v. Kuckenmeister*, 619 F.3d 1010, 1020 (9th Cir. 2010) ("Because the exhaustion requirement is a creation of the federal courts . . . and is not written into the statute, it is a prudential rather than jurisdictional requirement."); *Crowell v. Shell Oil Co.*, 541 F.3d 295, 308-09 (5th Cir. 2008) ("We have never construed the ERISA exhaustion doctrine strictly as a jurisdictional bar and have referred to it as a defense. Other circuits have expressly held that ERISA exhaustion is not jurisdictional, and we agree.") (cleaned up); *Met. Life. Ins. Co. v. Price*, 501 F.3d 271, 280 (3d Cir. 2007) ("ERISA's exhaustion doctrine places no limits on a federal court's subject matter jurisdiction."); *Pease v. Hartford Life Accident Ins. Co.*, 449 F.3d 435, 446 (2d Cir. 2006) ("[F]ailure to exhaust ERISA administrative remedies is not jurisdictional, but is an affirmative defense."). However, *Chorosevic* and *Angevine* are controlling in this circuit.

The Plan requires that a beneficiary complete two levels of internal review to exhaust the administrative process. Avera completed those steps. Therefore, the only issue is whether the single form that was missing—described by the Administrator as the "Appointment of Authorized Representative for Meritain Appeal" form (Doc. No. 13-2 at 3)—invalidates those steps. Avera argues that the Administrator's failure to provide that form during the appeals process means that the claim is deemed exhausted. *See* Doc. No. 17-2 at 54 ("If the Plan Administrator denies a claim, it must provide to you in writing . . . [a] description of any additional information or material that you must provide in order to perfect the claim [and an] explanation of why the additional material or information is necessary . . ."); 57 ("If the Plan fails to follow the claim procedures described above, you will be deemed to have exhausted the Plan internal claim procedures . . ."). This argument partially misstates the adverse decisions, which referred to the missing form and stated that it was a basis for the denial in both the first and second appeal (although there is nothing to suggest the form was actually provided). *See* Doc. No. 13-3 at 1 ("Instead, the Covered Person must complete a form to designate an authorized representative. Since no form was completed, Avera is not authorized to act on behalf of Mr. Marquez") and Doc. No. 13-5 at 1 (same). However, I need not decide whether the failure to provide the form itself excuses Avera's exhaustion requirement, because I find that Avera substantially complied with the internal appeals process despite the missing form.

Avera timely filed two appeals of the adverse decision, which the Administrator accepted and ruled on. Although the Administrator did not have a copy of the particular form demonstrating that Avera was authorized to act on Marquez's behalf, it was on notice of the Assignment and proceeded as though Avera had a right to make the appeal by producing the necessary documents and issuing a decision. Had the Administrator's decision rested solely on Avera's authority to pursue the claim, I would question whether the Administrator had a fair chance to process the appeal according to the Plan's terms and would consider remanding for further process. However, the Administrator also

11

ruled on the merits, determining that Marquez's coverage was properly terminated under the Plan as a result of his using a false name and social security number.

The purposes of the exhaustion requirement have been fulfilled here. Meadowvale was given an opportunity to correct error (if any). It processed Marquez's claim in the same way it would process any other claim and, as a result, there exists an administrative record from which I can evaluate the merits of Marquez's claim. *See Young v. UnumProvident Corp.*, No. Civ.01-2420 DWF/AJB, 2002 WL 2027285 (D. Minn. Sept. 3, 2002) (although plaintiff used an improper form, the claim was exhausted because the Administrator accepted and processed the appeal despite the error such that further administrative review would have been futile); *Theil v. United Healthcare of Midlands, Inc.*, No. 8:00CV426, 2001 WL 574637 (D. Neb. Jan. 23, 2001) (purposes of the exhaustion requirement were satisfied because the Administrator considered and decided the appeal despite the use of incorrect appeal procedures). Here, the Administrator's denial on the merits means that further administrative procedure would be futile. Defendants' motion will be denied.

## V.  CONCLUSION

For the foregoing reasons, defendants' motions (Doc. No. 13 and 18) to dismiss are **denied.**

**IT IS SO ORDERED.**
**DATED** this 4th day of May, 2018.

_____
Leonard T. Strand, Chief Judge